PONDER, Judge.
Eloise M. Wilkinson Russell, plaintiff-appellee, filed suit for separation on the grounds of abandonment against Michael Joseph Russell, defendant-appellant. Mr. Russell in reconvention prayed for separation against Mrs. Russell on the grounds of abandonment. After trial the lower court rendered judgment in favor of plaintiff-ap-pellee granting her a separation “a mensa et thoro,” and dismissed defendant-appellant’s reconventional demand. Mr. Russell has timely perfected this appeal. We affirm.
In mid-July, 1975, evidently amid extreme marital friction, Mrs. Russell, frustrated because her husband had not talked to her for some two months, wrote him a note, stating an intent to leave. The next day the parties discussed the feasibility of Mr. Russell moving out of the matrimonial domicile.
Mr. Russell testified that he resented the fact that his wife’s father cared for her while she was recuperating from a recent difficult pregnancy and childbirth.
In any event, according to Mrs. Russell, she told her husband that if he didn’t want to stay, he did not have to. She testified that he chose to leave, but wanted time to find another place to stay.
Apparently the situation worsened. On or about July 19, 1975, Mr. Russell moved from the house. He testified that he left at the wife’s insistence and that she actually packed his bag. Mrs. Russell testified that she packed her husband’s suitcase only after he said he was leaving and that she merely did not want his leaving to be drawn out any further.
This suit was filed on July 25, 1975.
In early August, 1975, Mrs. Russell left the house trailer because of high water and moved in with her father. This was corroborated by the testimony of all the witnesses, even that of her husband.
In mid-August, with the water still ankle deep outside, Mr. Russell moved back into the trailer. On at least four occasions thereafter he telephoned his wife and asked her to come back. He testified that he wanted her back so they could be a family again. However, Mrs. Russell testified that her husband told her he wanted her back for other reasons. According to her, he said that if she came back, each of them could go their separate ways. He could do what he wanted; she could do what she wanted. She further testified that he had told her that the only reason he wanted such an arrangement was to make sure that he would not have to pay alimony or child support the rest of his life.
*279 There were at least two confrontations of the parties after they separated in fact. In one instance, Mrs. Russell had left the baby with her father and gone out with one of her friends. Mr. Russell became angered and found his wife in a nightclub. Mrs. Russell testified that he slapped her and yelled at her. Mr. Russell admitted slapping at his wife but did not remember hitting her. In any event, he was escorted from the club. Mrs. Russell, afraid, was escorted home by two police officers.
On another occasion, Mr. Russell went to his wife’s place of employment, a bank. Mrs. Russell testified that her husband hollered wild accusations at her, “whose bed did you sleep in, where is my child, why aren’t you home, I’m back in the trailer.” She further testified that the bank’s personnel director warned her that if any further disturbances occurred she might be fired.[1] Mr. Russell admitted the confrontation, but denied that he was loud or used obj ectionable language.
Defendant-appellant argues that the lower court erred in:
1) finding that he abandoned his wife;
2) not finding that he was justified in leaving the matrimonial domicile; and,
3) not finding that his wife abandoned him.
The trial judge characterized Mr. Russell’s leaving as “the final act in what had already been an abandonment in spirit;” it “merely formalized what had already taken place.” We cannot disagree. Mr. Russell did not deny that he had ceased communicating with his wife. Without such a denial, we must take it as true. This certainly evidences that Mr. Russell did not want to live with his wife.
Both parties, as expected, contradict each other as to the circumstances around Mr. Russell’s departure. Mr. Russell contends that he left at his wife’s insistence. Mrs. Russell contends that her husband when given a choice, chose to leave, and that she merely helped him pack his suitcase.
The trial judge viewed the witnesses, evaluated their demeanor, and chose to believe Mrs. Russell’s version. He was in a better position than this court to evaluate credibility. The jurisprudential rule that the trial judge’s evaluation of credibility is entitled to great weight and will not be overturned in the absence of manifest error is particularly applicable in domestic relations cases. Blackman v. Blackman, 253 So.2d 672 (La.App. 2nd Cir. 1971); Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947).
No manifest error has been shown. Instead, we reach the same legal conclusions of the lower court. Accordingly, we find that Mr. Russell left the matrimonial domicile without legal justification and by no fault of his wife.
Defendant-appellant argues that, if he is deemed to have left without legal justification, he still cannot be considered to have abandoned his wife because he went back to the trailer house and asked her to come back. Ordinarily, a husband who returns to the matrimonial domicile and in good faith offers to resume the marital relation, is not considered to have abandoned his wife. However, these facts are not here presented.
We, like the lower court, choose to believe Mrs. Russell’s version that the offers by her husband were made only because he did not want to worry about paying alimony and child support. They were not manifestations of a sincere desire to resume the marital relationship. Under the circumstances, Mrs. Russell was clearly justified in refusing to return.
*280 Lastly, defendant-appellant argues that the basis of the lower court’s judgment was not abandonment, but cruelty, that the only evidence of any cruelty on his part were the altercations at the nightclub and work, and that such evidence was not only insufficient, but also inadmissible under the pleadings as the only cause of action alleged by his wife was abandonment. Defendant-appellant further argues that his failure to object in the lower court to the nightclub and work episodes did not enlarge the pleadings so as to include the separate issue of cruelty because pleadings are not enlarged by the introduction of evidence that is admissible on a contested issue, that the question of abandonment includes the issue of fault, both initially and on failure to reconcile, and the ordinarily objectionable evidence went to that issue.
We have carefully examined the oral reasons in the record and they reflect that the lower court based the judgment of separation entirely on the grounds of abandonment, not cruelty. Therefore, we find it unnecessary to discuss defendant-appellant’s contentions relative to cruelty.
Accordingly, for the above and foregoing reasons we affirm; defendant-appellant to pay all costs of this appeal.
AFFIRMED.

. Defendant-appellant argues that what the personnel officer said is hearsay and cannot be considered by this court. We note, however, that defendant-appellant has waived this objection by his failure to timely object to .this testimony in the lower court.