Gahn vs. Darby.

No. 8952.

JAMES W. GAHN vs. ELIZA DARBY, HIS WIFE.

The wife is bound to live with her husband and to follow him wherever he choses to reside. C. C. Art. 120.

If, therefore, the husband decides to change the matrimonial domicile from one place to another, for reasons of his own, the wife must follow him to his new abode.  Her refu-

sal, without lawful cause, will be construed as an abandonment within the meaning of the law, and will justify his demand for a judgment ordering her to comply with his request.

The facts that he is poor, with a scanty means to supply her wants and tastes, that he has an irascible temper, a cool and distant disposition, has treated her harshly, in consequence of which they had been previously separated, do not operate a lawful cause for such refusal, when it appears that they had been reconciled and had exchanged pardon.

Pending the litigation, the father is entitled to the legal custody of the child, unless strong reasons exist to the contrary.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*H. M. Hyams* and *F. Kernan* for Plaintiff and Appellant.

*Egan & McEnery* for Defendant and Appellee.

The opinion of the court was delivered by

Poché, J.   Plaintiff seeks to obtain a judgment of separation from bed and board against his wife on the ground of abandonment, and has obtained service on her of three reiterated summonses prescribed in such cases by Article 145 of the Civil Code.

The defendant alleges, in justification of her refusal to follow her husband, that since their marriage in the year 1877, in the parish of Union, where they resided until September, 1882, he had been guilty of unpardonable negligence and coolness, and of cruel and outrageous conduct, towards her, to such an extent as to render their living together insupportable, and that by means of a suit for separation from bed and board which he had filed against her in Union parish, in October, 1882, he had publicly defamed her good name and character. Her answer concludes with a reconventional demand for separation from him, predicated on her foregoing allegations of ill conduct and harsh treatment and defamation.   Both parties pray for the legal custody, pending the litigation and after final judgment, of a boy, born in July, 1879, of their marriage, who has been in the actual or physical custody of the mother since the separation of the spouses.

The district judge rejected plaintiff's demand and dismissed defendant's reconventional demand as in case of non-suit.   Both parties have appealed.

Our law on the subject of this litigation is very plain and unambiguous and is well settled in our jurisprudence.   The question involved is, therefore, mainly a question of fact.

The evidence is very conflicting and the record contains a mass of irrelevant testimony, so that the investigation of the case has not been free of difficulty.  Our brother of the District Court has not favored us with the reasons of his conclusions.  But, under the pleadings, his judgment appears, to us, hardly reconcilable with the evidence and not responsive to the issue in the case.

The only defense which could defeat the husband's demand, which is at this stage, for a judgment sentencing the wife to comply with his request to join him in the matrimonial domicile which he proposed to establish in the city of New Orleans, in lieu of their former domicile in Union parish, must rest on proof on the part of the wife, of a lawful cause for her refusal to further co-habit with her husband.  Now, under the pleadings in this case, such a cause was alleged to be formed in the cruel and outrageous conduct of the husband and in the public defamation of his wife ·by him, through the injurious action for separation which he had filed against her in Union parish and which he is alleged to have abandoned for the reason that he feared to meet her on the proof.

If the judge found such facts from the evidence, that conclusion should have prompted him to allow the defendant's reconventinal demand, and he would thus have put an end to the painful uncertainty and suspense which must cause mutual suffering and great misery to both spouses and which doubtless operates a denial of justice to the injured party.  If, on the other hand, the evidence failed, in his opinion, to support the justification relied on by the wife, the plaintiff was entitled to the first relief provided for by law in such cases.  But his judgment disposes of neither issue.

A careful study of the record has led us to the conclusion that the defendant has failed to prove a legal justification of her refusal to follow her husband to the new matrimonial domicile.

In default of such justification she was bound to live with·her husband and to follow him wherever he choose to reside and this obligation implied the duty to leave the parish of Union and to join her husband in the city of New Orleans, when he requested her in January, 1883, to come to him at the domicile which he had established in that city.  C. C. Art. 120;  5 U. S. 61, Chrétene vs. Husband;  1 A. 315, Neal vs. Husband.

From the record we gather the following as the main substantial facts which bear on the issue presented by the wife's alleged justification to live separated from her husband.

He is shown to be a man of irritable and irascible character, of a cool and distant disposition and somewhat exacting of the duties and regards which are due to him by his wife. As a consequence of such a disposition, he was harsh and, perhaps, indecorous in speech, in the reprimands which he frequently inflicted on his wife, and, on two occasions, he became very violent and abusive to her. Once he actually attempted to beat and strike her, when he was checked by the presence of her father; and, on another occasion he pushed her away from him with violence. These ebullitions of temper and scenes of anger and violence were followed by a separation of the spouses. But, yielding to the entreaties of the wife's father and of other friends, the husband consented to return to her and they were then fully reconciled and reunited. Hence, under the law, these scenes are no longer a factor in this case and must be eliminated from its discussion. C. C. Art. 152.

The evidence fails to show the repetition of any such scenes after the reconciliation, although the latter was of short duration. The spouses had then ceased to board at a public hotel, where the first separation had taken place and they had established their home at the house of the wife's parents.

New and irritating causes soon affected the harmony of their conjugal relations and interrupted once more the peace of their lives together.

They weighed heavily on the mind of the husband, who resolved to leave a place in which local influences combined to mar his conjugal union and to destroy his happiness. He then came to this city, where his wife refuses to follow him.

The record shows that his reputation as a citizen, as a man of honor and as a husband and father, was good in the locality where he lived and where he was known. He was poor and plain in his tastes and mode of life, but he was steady and industrious, and he supplied his wife and child in all their wants to the full extent of his means, which were limited to his salary as a clerk.

She had been well educated, and was accomplished in music and she loved the prominence which that circumstance brought to her. Her tastes were ambitious, and they engendered wants and aspirations which would have required extensive means for their gratification. His means were inadequate to fill the measure. Hence flowed disappointment, discontent, quarrels and consequent coolness.

But the law affords no remedy for such troubles, which must be met and overcome by the spouses themselves, through a spirit of mutual forbearance and of affectionate resignation characteristic of all lasting unions, whether of matrimony or of friendship.

The law lends its power only in extreme cases, only to the injured party and only in instances of grievous wrongs and of unbearable oppression.

Our law looks with great favor on marriage and gives no encouragement to divorces and separation, which should be resorted to when all endeavors to secure harmony and peace in the married life have failed on the part of the injured spouse, who is free of wrong on his or her part.

The defendant further relies for justification, and for relief on the attack made on her good name and character by her husband by means of an injurious and defamatory action alleged to have been brought against her by him.

But she has failed to introduce in evidence the record of that suit, and that allegation stands also without support in the record.

Some allusions are made by several witnesses to such a proceeding, but in the absence of the only legal proof of such a suit, if it was ever filed at all, the Court must ignore everything connected therewith. Hence, this allegation must also share the fate of other means of justification invoked by the defendant.

The record therefore presents the bare question of the wife's obligation to follow her husband to the new matrimonial domicile which he had the right to establish, and of her refusal, without lawful cause, to comply with his request. He is therefore entitled to the judgment contemplated in article 145 of our Code. And as the record shows no strong reasons against his claim for the legal custody of the child, he is likewise entitled to that relief under the provisions of article 146, Civil Code.

The judgment of the lower court, in so far as it rejects plaintiff's demand, is therefore reversed. And it is now ordered and decreed that plaintiff do have and recover judgment against the defendant, sentencing her to join him in the matrimonial domicile established by him in New Orleans; and allowing to plaintiff, pending this litigation, the legal custody of the child, Willie A. Gahn, issue of his marriage with defendant; and it is ordered that this cause be remanded to the lower court, to be further proceeded with according to law; and that the judgment of the court a quâ, in so far as it dismisses defendant's reconventional demand, as in case of non-suit, be affirmed, costs of this appeal to be paid by the defendant, those of the lower court to abide the final decision of the cause.